**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jacob Pridemore,<br><br>  Plaintiff,<br><br>v.<br><br>Colter Electric LLC, et al.,<br><br>  Defendants. | No. CV-22-08173-PCT-DWL<br><br>**ORDER** |

In this action, Jacob Pridemore ("Plaintiff") has sued Colter Electric, LLC ("Colter Electric"), Colter Van Wagenen ("Van Wagenen"), and Noelle Van Wagenen (together, "Defendants") for unpaid wages under the Fair Labor Standards Act ("FLSA"), the Arizona Minimum Wage Act ("AMWA"), and the Arizona Wage Statute ("AWS"). (Doc. 1.) Now pending before the Court is Defendants' motion to dismiss for lack of subject-matter jurisdiction. (Doc. 12.) For the following reasons, the motion is denied.

**BACKGROUND**

I.  The Factual Allegations In The Complaint

Plaintiff was an employee of Colter Electric from May 19, 2022 until September 16, 2022.[1] (Doc. 1 ¶¶ 48, 50.) At all relevant times, Van Wagenen was Plaintiff's supervisor.

---

[1]  Defendants contend that, on September 16, 2022, Van Wagenen "confronted Plaintiff over allegations by Plaintiff's supervisor and coworkers that Plaintiff was not working the full 8 hours that he had been reporting weekly on his timecards" and had instead been working "side jobs" using Colter Electric tools while claiming he was doing work for Colter Electric. (Doc. 12 at 2.) According to Defendants, Plaintiff, in response to the allegations, "got angry with Mr. Van Wagenen, cursed at him, [and] quit without notice." (*Id.*).

(*Id.* ¶¶ 26-30.)  Plaintiff worked 40 hours per week and was paid at a rate of $35 per hour. (*Id.* ¶¶ 9, 50-53.)  Plaintiff was also reimbursed for gas expenses.  (*Id.* ¶ 55.)

On September 23, 2022, after his employment ended, Plaintiff texted Van Wagenen "to inquire about his final check."  (*Id.* ¶ 31.)  Van Wagenen responded, "We are currently investigating the validity of the wages that are claimed.  I will send you our response next week.  We will have confirmation from the General contractors as well."  (*Id.*)

On September 28, 2022, Plaintiff initiated this action.  (Doc. 1.)

II. Developments After The Complaint Was Filed

On September 30, 2022, Plaintiff received his final paycheck via direct deposit. (Doc. 12-1 at 8 [direct deposit record]; Doc. 13-1 ¶ 11 [Plaintiff's acknowledgement of direct deposit].)  The amount was $1,169.50, which represented the full amount of Plaintiff's expected wages ($1,400, calculated by multiplying 40 hours by Plaintiff's hourly rate of $35) minus taxes.  (Doc. 12-1 at 3 ¶ 25 [declaration from Van Wagenen].)

That same day, Plaintiff wrote a check, payable to Colter Electric, in the amount of $1,169.50 and wrote "DIRECT DEPOSIT RETURN" in the memo line.  (Doc. 12-1 at 16.) However, Plaintiff did not mail the check to Defendants—instead, because Defendants were not yet "represented by counsel," Plaintiff mailed the check to his attorney.  (Doc. 13 at 3; Doc. 13-1 ¶ 12.)

On November 2, 2022, defense counsel notified Plaintiff's counsel of the representation.  (Doc. 13-2 ¶ 7 [declaration from Plaintiff's counsel].)

The next day, on November 3, 2022, Plaintiff's counsel notified defense counsel via email that Plaintiff had rejected the wages tendered.  (Doc. 13-6 at 3.)

On November 10, 2022, defense counsel responded via email as follows: "[Plaintiff] has had these wages for nearly 6 weeks.  He cannot now seek to return the wages he willingly accepted over these weeks.  Any attempt to return the tender will be rejected by Defendants, as Defendants properly paid any wages due to [Plaintiff]."  (*Id.* at 2.)

That same day, Plaintiff's counsel responded: "[Plaintiff] wrote the check right when he received the late payment and sent it to our firm.  Because, I did not know if the

1 company was represented by an attorney, I did not have contact with them.  I then waited
2 until you said you represented the firm and one day after that, I sent you the below email.
3 You are free to do what you want with the check but we are going to mail it to your firm
4 tomorrow." (*Id.*)

5   On or about November 14, 2022, defense counsel received the check.  (Doc. 12-1
6 at 10 ¶ 7.)

7   On November 16, 2022, defense counsel returned the check to Plaintiff's counsel,
8 with a letter stating the reasons for the return.  (*Id.* at 10 ¶ 8.)

9   According to Defendants, the funds remain in Plaintiff's possession.  (*Id.* at 10 ¶ 9.)
10 Plaintiff neither confirms nor denies this assertion.  (*See generally* Docs. 1, 13.)

**DISCUSSION**

I.  Legal Standard

  The Court has an independent obligation to determine whether it has subject-matter jurisdiction.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).  Pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Standing, mootness, and ripeness all pertain to a federal court's subject-matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution."); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) . . . .").

  "Rule 12(b)(1) jurisdictional attacks can be either facial or factual."  *White*, 227 F.3d at 1242.  "With a factual Rule 12(b)(1) attack, . . . a court may look beyond the complaint . . . without having to convert the motion into one for summary judgment.  It also need not presume the truthfulness of the plaintiffs' allegations."  *Id.* (internal citations omitted).

…

II.     The Parties' Arguments

Defendants move to dismiss the complaint for lack of subject-matter jurisdiction. (Doc 12 at 1.) Defendants contend that because Colter Electric deposited the alleged unpaid wages into Plaintiff's account on September 30, 2022, and the amount deposited is more than that to which Plaintiff would be entitled under the FLSA, there is no live controversy. (*Id.* at 4-5.) More specifically, Defendants assert that because Plaintiff alleges that he is owed 40 hours' worth of minimum wages, he would at most be owed $290 ($7.25/hour x 40 hours). (*Id.* at 4.) Defendants acknowledge that, if successful on his FLSA claim, Plaintiff would also be entitled to an equal amount in liquidated damages, bringing his total recoverable amount to $580. (*Id.*) But Defendants contend this sum is still far less than the $1,400 they paid Plaintiff. (*Id.*) Accordingly, Defendants contend that "Plaintiff's FLSA claim relating to his employment with Colter Electric is moot against any party." (*Id.* at 5.) Finally, Defendants argue that because Plaintiff's FLSA claim is moot, the Court lacks supplemental jurisdiction over his state-law AMWA and AWA claims. (*Id.* at 5-6.)

Plaintiff opposes Defendants' dismissal request. (Doc. 13.) As for his FLSA claim, Plaintiff argues that Defendants' payment was a settlement offer and "Plaintiff had no obligation to accept his wages as settlement when he had a claim for additional damages." (*Id.* at 5.) Plaintiff argues that he "rejected this tendered direct deposited payment" by mailing a check for the same amount to defense counsel. (*Id.*) Alternatively, Plaintiff argues that even if his attempt to reject the tender was unsuccessful, a live controversy remains because "Defendants direct deposited his wages only—not liquidated, treble, attorneys' fees, costs, and interest." (*Id.*) Plaintiff concludes that, because there is still a live controversy with respect to his FLSA claim, the Court also has supplemental jurisdiction over his state-law claims. (*Id.* at 7.)

In reply, Defendants reiterate that $1,400 is more than Plaintiff can recover on his FLSA claim and, although Plaintiff attempted to return the payment, he is still in possession of the $1,400. (Doc. 15 at 1-2.) Defendants also reject Plaintiff's characterization of the

payment as a settlement offer, noting that the payment was approved before the lawsuit was filed. (*Id.* at 2-3.)

III.   Analysis

Under the FLSA, employers must pay employees a minimum hourly wage of $7.25. 29 U.S.C. § 206(a)(1). A cause of action "accrues at each payday immediately following the work period for which compensation is owed." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007). An employer who violates these requirements "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, "[d]ouble damages are the norm." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003). Additionally, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

Defendants do not dispute that, because they failed to pay Plaintiff on his regularly scheduled payday (*i.e.*, September 23, 2022), he has a cause of action under the FLSA. *Biggs v. Wilson*, 1 F.3d 1537, 1541 (9th Cir. 1993) ("[T]he FLSA is violated unless the minimum wage is paid on the employee's regular payday . . . ."); *Rother v. Lupenko*, 515 F.App'x 672, 675 (9th Cir. 2013) ("[P]ayment must be made on payday, and . . . a late payment immediately becomes a violation equivalent to nonpayment."). The dispute turns on whether the $1,169.50 deposit into Plaintiff's bank account on September 30, 2022 rendered his FLSA claim moot.

"A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *Am. Cas. Co. v. Baker*, 22 F.3d 880, 896 (9th Cir. 1994). In support of their contention that the direct deposit on September 30, 2022 mooted Plaintiff's FLSA claim, Defendants cite *Orozco v. Borenstein*, 2012 WL 3762408 (D. Ariz. 2012), *Rueling v. MOBIT LLC*, 2018 WL 3159726 (D. Ariz. 2018), and *Kouba v. Rezenberger, Inc.*, 2012 WL 7149410 (D. Ariz. 2012).

In *Orozco*, the court dismissed a class action for improper wage deductions because

the employer, after the suit was filed, reimbursed each employee for the wage garnishments along with liquidated damages. 2012 WL 3762408 at *3. The plaintiff argued that "he [had] not been fully compensated for his claims because (1) he [sought] damages for a third year due to the Bakery's 'willful' FLSA violations, and (2) he was not reimbursed for a time, key or food handler's card." *Id.* The court disagreed, finding that the plaintiff's "conclusory allegations of willfulness, without any evidentiary detail," were insufficient to satisfy federal pleading requirements and that the plaintiff "[did] not allege that he ever had to replace a time or key card." *Id.* at *3-4.

In *Rueling*, the court held that a plaintiff's FLSA claim was moot where she was entitled to $1,740 (for minimum wages and liquidated damages) but the defendant wired her $5,000. 2018 WL 3159726 at *2. Although the plaintiff contended that "she did not accept the wire transfer and there [was] no binding settlement agreement between the parties," the court emphasized that the plaintiff "[did] not state that she returned the funds or suggest that the money was placed in her account subject to any conditions or restrictions." *Id.* at *4. *See also id.* ("Plaintiff does not dispute that the $5,000 was wired to her bank account without restrictions, and she does not argue that she returned the $5,000 to [defendants]."). The court concluded that the FLSA claim was moot because the plaintiff "ha[d] not established that the Court [could] award her any additional relief on her FLSA claim." *Id.* at *5.

Finally, in *Kouba*, the court held that a plaintiff's FLSA claim was moot where the employer issued two checks: one for the plaintiff's missed wages and the other for statutory damages and interest. 2012 WL 7149410 at *2. The plaintiff cashed the larger check because "he believed it represented an admission of wrongdoing" but did not cash the smaller check because "he did not want to 'waive his right for a jury to decide the facts.'" *Id.* at *1. Because the defendant "tendered payment for the maximum amount of damages that Kouba could receive," the court held that the FLSA claim was moot, reasoning that "[t]he court has no jurisdiction over a claim that can no longer be redressed." *Id.* at *2.

Even accepting that, under *Orozco*, *Rueling*, and *Kouba*, it is possible for an

employer to moot an employee's FLSA lawsuit by making a successful post-lawsuit tender of the full recoverable amount, there are two reasons why Defendants have not mooted Plaintiff's FLSA claim here. First, although it was undisputed (or, at least, beyond reasonable dispute) that the tendered payment in each of those cases was large enough to cover the entirety of the plaintiff's potential FLSA recovery, that point is legitimately disputed here. Defendants are correct that Plaintiff may recover a total of only $580 in wages and liquidated damages based on his FLSA claim,[2] which is less than the $1,169.50 that Defendants attempted to tender him, but the FLSA also provides for the recovery of costs and reasonable attorneys' fees. The docket reflects that Plaintiff paid a $402 filing fee to initiate this action. (Doc. 1.) This increases Plaintiff's potential recovery to $982. Then there are attorneys' fees. Although Plaintiff has not made any attempt to quantify the fees he incurred through September 30, 2022, the Court has little trouble accepting that the fees exceeded $500 by that point, as Plaintiff's counsel had already drafted and filed the complaint. Thus, the attempted tender on September 30, 2022 was not large enough to conclusively moot Plaintiff's FLSA claim.[3] *See generally Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.").

Second, this case is also distinguishable from *Orozco*, *Rueling*, and *Kouba* in that Plaintiff took immediate steps to decline to accept the tendered funds. The Court acknowledges that the funds apparently remain deposited in Plaintiff's bank account, but this is not by Plaintiff's choice—instead, it is due to the happenstance of Defendants'

---

[2] The Court notes that it is not a foregone conclusion that Plaintiff will be entitled to liquidated damages in this action. "If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260. The materials attached to Defendants' motion suggest that Defendants did not immediately pay Plaintiff after he quit on September 16, 2022 "because he did not turn in his timecard and [Van Wagenen] did not know whether or how many hours he worked, and because there was a concern that he had lied about past hours worked." (Doc. 12-1 at 3 ¶ 19.)

[3] This would be true even if the attempted tender on September 30, 2022 were characterized as a $1,400 payment (the pre-tax amount) rather than as a $1,169.50 payment.

unilateral ability to direct-deposit funds into Plaintiff's bank account (which, presumably, existed only by virtue of the parties' former employment relationship). But for that happenstance, Defendants would have been required to offer the funds to Plaintiff and Plaintiff would have been free to reject them. *See, e.g.*, *Sao v. Pro-Tech Prods.*, 2019 WL 6909566, *6 (D. Ariz. 2019) (holding that "[a] plaintiff can choose to accept or not accept a check" and has "no obligation to accept his wages as settlement when he had a claim for additional damages"); *O'Neal v. Am.'s Best Tire LLC*, 2016 WL 3087296, *2 (D. Ariz. 2016) ("Defendants . . . admit that they are liable for unpaid overtime compensation and liquidated damages . . . [but] contend that they have paid Plaintiffs an amount equal to this liability, and argue that this payment moots Plaintiffs' claims. Plaintiffs respond that they have not accepted the payment offered by TD Defendants. . . . [TD Defendants reply that the] tender of payment is sufficient to establish payment, 'whether the checks were cashed or not' . . . [but the law] does not remotely support this proposition. . . . [A] defendant cannot moot a plaintiff's claim by unilaterally providing a remedy."). Nor does the Court assign any significance to Defendants' purported rejection of Plaintiff's refusal to accept their tender, which they sought to accomplish by sending the check back to Plaintiff's counsel after Plaintiff returned it to them.

For these reasons, Defendants' motion to dismiss is denied. Defendants have not established that Plaintiff's FLSA claim is moot and their challenge to Plaintiff's state-law claims is contingent on the dismissal of the FLSA claim.

Before concluding, the Court also offers an observation. Although Defendants' tender attempt on September 30, 2022 may have been too small to fully cover Plaintiff's potential recovery on his FLSA claim, it was close. One might have expected it to spur both sides to take steps to reach a fair settlement that made Plaintiff whole while keeping both sides' costs and attorneys' fees to a minimum. That didn't happen. Instead, the case took a contentious turn, which has now resulted in costly and inefficient motions practice. One possible explanation is that the potential recovery of additional attorneys' fees is now what is driving this case. The Court thus finds it appropriate to emphasize that the FLSA

only authorizes the recovery of *reasonable* attorneys' fees to a prevailing plaintiff, which may not include all (or even any) of the fees incurred after the rejection of the sort of tender attempt that was made here.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 12) is **denied**.

Dated this 10th day of April, 2023.

Dominic W. Lanza
United States District Judge